## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MANDY EHRLICH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-2142-JTM-TJJ |
| ) | |
| UNION PACIFIC RAILROAD ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER

In this wrongful death action, Plaintiff seeks to recover damages arising from an incident in which her minor son was struck and killed by a Union Pacific train traveling through Russell, Kansas, on March 22, 2012. Currently pending before the Court is Plaintiff's Motion to Compel (ECF No. 36). Plaintiff requests an order, pursuant to Fed. R. Civ. P. 37, compelling Defendant Union Pacific Railroad Company to produce the medical files of the three train crew employees operating the train. As set forth below, the motion is granted in part and denied in part.

### I.   Procedural History

Plaintiff filed her Motion to Compel on May 7, 2014. She sought an order compelling Defendant to produce documents and tangible things responsive to several requests for production and finding that Defendant waived any claim of attorney-client privilege or work product by failing to produce a privilege log. In response, Defendant filed its Motion to Strike Plaintiff's Motion to Compel or, in the Alternative, Motion to Stay Deadline to Respond to that Motion (ECF No. 39). Defendant requested that the Court strike Plaintiff's Motion to Compel on the grounds that Plaintiff failed to confer concerning the matter in dispute prior to filing her motion as required by D. Kan. Rule 37.2, and because the motion was untimely under D. Kan.

Rule 37.1(b). On June 19, 2014, the Court denied Defendant's motion to strike, but gave the parties additional time to confer about the issues raised in Plaintiff's motion to compel and extended Defendant's deadline for responding to the motion.[1]

Defendant filed its response (ECF No. 57) on July 21, 2014. Plaintiff filed her reply (ECF No. 61) on August 11, 2014. The Court is now ready to rule on the remaining disputes at issue in Plaintiff's motion to compel.

## II.     Remaining Discovery Issue

Plaintiff states in her reply that she withdraws the portion of her motion to compel regarding waiver of attorney-client privilege, noting that Defendant produced a privilege log on July 15, 2014. She acknowledges the sole remaining issue before the Court is whether Defendant must produce the train crew's medical files in Defendant's custody and control that it maintains on the employees allegedly responsible for the train collision, as sought in Plaintiff's First Request for Production No. 3.

On February 2, 2014, Plaintiff served her First Request for Production No. 3 requesting that Defendant produce the following:

> All documents which record, reflect, or otherwise evidence, in whole or in part, the medical file of the train crew kept by the Defendant and the Defendant's chief medical officer or surgeon in the ordinary course of the Defendant's business, relating to train crew's health and physical condition during their tenure of employment with the Defendant.[2]

On March 21, 2014, Defendant served its response objecting to Request No. 3 on the grounds that it is facially overly broad and unduly burdensome, seeks private and confidential

---

[1] *See* June 19, 2014 Mem. & Order (ECF No. 50).

[2] Ex. B to Pl.'s Mot. to Compel (ECF No. 36-2) at 2.

information concerning Defendant's employees, seeks documents protected by the attorney/client and work product privileges, and seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.[3] Defendant further objected to the extent the Request requires Defendant to violate the Health Portability and Accountability Act ("HIPAA") or other medical privacy laws.

### A. Plaintiff's Burden with Regard to Defendant's Objections

As an initial matter, Defendant argues that Plaintiff has failed to bring "into play" Defendant's objections—that the discovery requests are overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence—by Plaintiff's failure to specifically address each objection in her motion to compel. Plaintiff stated in her motion that because Defendant asserted the same boilerplate objection to most of her thirty-five requests for production, she was unsure of Defendant's position on a number of them. In her motion, she asked the Court to overrule the objections unless Defendant provided substantive responses to support these boilerplate objections. Plaintiff further stated in her motion that "because Defendant cannot rely solely on boilerplate objections and Defendant has not bothered to respond or confer with Plaintiff about this dispute, [she] will not waste the Court's time by responding to Defendant's 'overbroad, unduly burdensome, not reasonably calculated to lead to admissible evidence' type objections here."[4]

Defendant argues that Plaintiff's failure to specifically or adequately address the actual substance or merit of each of the objections that Defendant lodged to Plaintiff's discovery requests in her motion to compel means that she has failed to bring these objections "into play."

---

[3] *Id.*

[4] Pl.'s Mot. to Compel (ECF No. 36) at 3.

Thus, according to Defendant, its objections are not ripe for consideration and should stand. Defendant relies upon a footnote in the 2004 opinion, *Sonnino v. University of Kansas Hospital Authority*.[5] In *Sonnino*, the court, disagreeing with *Cotracom Commodity Trading Co. v. Seaboard Corp.*,[6] set out that "the party filing the motion to compel has the initial burden of addressing each boilerplate objection in its motion to compel" and that failure to address the objection in the motion to compel relieves the objecting party from having to reassert it and the objection stands.[7]  In *Sonnino*, Magistrate Judge Waxse commented:

> The Court wishes to emphasize that the party filing the motion to compel has the initial burden of addressing each boilerplate objection in its motion to compel. By doing so, that brings the objection "into play" and places the burden on the objecting party to support its objections. If the moving party fails to address an objection in its motion to compel, the objecting party need not raise it, and the objection will stand. To the extent *Cotracom* may be construed to relieve the moving party of the obligation to raise the objection in the motion to compel, the Court respectfully disagrees with *Cotracom*.[8]

Shortly after *Sonnino* was decided, Magistrate Judge Waxse denied a motion to compel in another case, based upon the *Sonnino* holding that the party filing a motion to compel has the initial burden to address each and every objection asserted by the objecting party—including

---

[5] 221 F.R.D. 661, 671 n.37 (D. Kan. 2004).

[6] 189 F.R.D. 655, 662 (D. Kan. 1999).

[7] *Sonnino*, 221 F.R.D. at 671 n.37.  In the text preceding footnote 37, the *Sonnino* court describes the *objecting* party's burden once the party filing the motion to compel initially brings the objections "into play." "[W]hen a party files a motion to compel and asks the Court to overrule certain objections, the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable. By failing to address these types of objections in response to a motion to compel, a party fails to meet its burden to support its objections. The Court is then left without any basis to determine whether the objections are valid and applicable in light of the particular circumstances of the case." *Id.* at 670–71.  The Court here agrees with *Sonnino*'s description of the *objecting* party's burden, but, as discussed, *supra*, not with *Sonnino*'s description of the moving party's initial burden.

[8] *Id.*

4

boilerplate objections. In *DIRECTV, Inc. v. Puccinelli*,[9] neither the party filing the motions to compel discovery, nor the party objecting to the discovery addressed the objections to the discovery requests at issue in the motions. In denying the motions to compel, Magistrate Judge Waxse rationalized that because the party moving to compel the discovery failed to address the objections in its motions to compel, the party objecting to the discovery requests was under no obligation to reassert the objections or to discuss them in its response to the motions, and the objections therefore would stand.[10]

The rule announced in the *Sonnino* and *DIRECTV* decisions placing on the party filing the motion to compel the initial burden to address each and every boilerplate objection to the discovery request, however, has since been criticized.[11] In *Williams v. Sprint/United Management Co.*, Judge Lungstrum directly rejected such a per se rule as unworkable. As Judge Lungstrum explained in *Williams*:[12]

> This court's own research has not uncovered any other cases—from the Tenth Circuit, this district, or any other court—in which a court has placed the "initial burden" on the moving party to address each and every objection lodged by the party resisting discovery. In fact, courts have long held that the burden is on the objecting party to show why an interrogatory is improper and while the burden is on the moving party to seek court action, the burden of persuasion remains at all times with the objecting party.[13]

---

[9] 224 F.R.D. 677, 691 (D. Kan. 2004).

[10] *Id.* at 691.

[11] *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 WL 731070, at *3–5 (D. Kan. Mar. 30, 2005); *Ice Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 WL 1364984, at *6 (D. Kan. May 9, 2007); *C.T. v. Liberal Sch. Dist.*, No. 06-2093-JWL, 2008 WL 394217, at *1 n.2 (D. Kan. Feb. 11, 2008).

[12] 2005 WL 731070, at *3–4 (D. Kan. Mar. 30, 2005).

[13] *Id.* at *3.

The court rejected the rule placing the initial burden on the moving party, explaining that in some instances, the moving party will simply not have the requisite knowledge to address the objection in a meaningful way.[14] For example, if a party resists discovery on the grounds that providing the information would be too burdensome, the moving party often has no knowledge as to how the information sought is maintained by the responding party in the ordinary course of business.[15] "Clearly, the nonmoving party in that case is better able to address the objection in the first instance."[16] Judge Lungstrum then stated he would:

> [C]ontinue to require the nonmoving party to bear the burden of showing specifically why the . . . discovery request is improper. In most cases, the moving party need only file its motion to compel and draw the court's attention to the relief the party seeks. At that point, the burden is on the nonmoving party to support its objections with specificity and, where appropriate, with reference to affidavits and other evidence.[17]

Subsequent cases have reiterated the point.[18] This Court agrees with these post-*Soninno* cases rejecting the placement of the "initial burden" on the party filing a motion to compel discovery to address each and every objection lodged by the party resisting the discovery sought in the motion.

In this case, the Court holds that to the extent footnote 37 in *Sonnino*[19] places the initial burden on the party filing the motion to compel to substantively address each and every boilerplate objection asserted by the party resisting discovery, it is contrary to well-established

---

[14] *Id.* at *4.

[15] *Id*.

[16] *Id.*

[17] *Id*.

[18] *Ice Corp.*, 2007 WL 1364984, at *6; *Liberal Sch. Dist.*, 2008 WL 394217, at *1 n.2.

[19] 221 F.R.D. at 671 n.37.

law.  The Court will thus apply the rule set forth by Judge Lungstrum in *Williams*[20] wherein Plaintiff need only file her motion to compel and draw the Court's attention to the relief she seeks.  In this case, Plaintiff identified the particular requests for production at issue in her motion, specifically identified the objections Defendant lodged to those discovery requests as boilerplate-style objections, and asked the Court to overrule these objections.  Plaintiff even cited a case supporting her argument that Defendant cannot rely on these boilerplate objections alone, but instead must provide specific support for them.  Plaintiff has thus more than adequately drawn the Court's attention to the relief she seeks in her motion to compel.[21]  Defendant's argument that Plaintiff failed to bring into play Defendant's objections is therefore rejected.  The burden is on Defendant to reassert and support any objections initially asserted in response to Plaintiff's Request No. 3.

### B.  Defendant's Objections to Request No. 3

Defendant asserts several arguments in support of its objections to Plaintiff's Request for Defendant's medical files for the train crew members who were operating the train at the time of the incident.  First, it argues that Request No. 3 is facially overbroad, unduly burdensome, and fails to identify the documents and information sought with reasonable particularity.  Second, Defendant claims that Request No. 3 is facially overbroad as it lacks any temporal limitation.  Defendant's third argument is that Plaintiff has failed to carry her burden of demonstrating the relevance of documents where the relevance is not readily apparent.  Finally, Defendant argues

---

[20] 2005 WL 731070, at *3–4.

[21] Even if the Court were to apply the arguably tougher standard *Sonnino* would initially impose on the moving party, which this Court has rejected, the Court would find that Plaintiff provided enough information in her motion to compel to meet her initial burden to bring Defendant's objections "into play."

that it should not be compelled to produce its employees' private, privileged medical information and HIPAA-protected documents.

### 1.     Overbreath and Unduly Burdensome Objections

Defendant reasserts its objections that Request No. 3 is facially overbroad, unduly burdensome, and fails to identify the documents or information sought with reasonable particularity.  According to Defendant, a chief problem with the Request is that Plaintiff uses words or phrases that render it facially overbroad.  It argues that certain omnibus words or phrases render Request No. 3 overly broad on its face and excuse Defendant from further explaining any burden in responding to the request.  Specifically, Defendant objects that the Request's language "[a]ll documents which record, reflect, or otherwise evidence, in whole or in part," and "relating to train crew's health and physical condition during their tenure of employment with the Defendant" renders it facially overbroad.   The Court disagrees and finds Request No. 3's usage of this particular language does not render it facially overbroad.  Any omnibus words or phrases are appropriately qualified by other language limiting the request to the train crew's "medical file[s]" kept by Defendant reflecting the "train crew's health and physical condition."  The train crew consists of only three individuals.  The Court further finds that Request No. 3 sufficiently describes the documents or category of documents with reasonable particularity, as required by Fed. R. Civ. P. 34(b)(1)(A).

Defendant next argues that the lack of a temporal limitation in Request No. 3 renders it facially overly broad and unduly burdensome.  Request No. 3 asks for the train crew's medical files "during their tenure of employment," which for one of the crew members is 30 years of records and more than 10 years for another.  Defendant claims that it should not be compelled to

produce medical files spanning such a lengthy time period for individuals who have not placed their medical condition in issue.

The Court agrees that the lack of *any* temporal limitation in Request No. 3 would presumptively make it overly broad. In *Union Pacific Railway Co. v. Grede Foundries, Inc.*,[22] the court found document requests with no temporal or geographic limitations and that would have encompassed virtually any documents relating to the defendant's tracks, repairs, and/or maintenance at any time and in any location "most certainly, would have been deemed objectionable."[23] Request No. 3, however, actually contains a temporal limitation on the medical files to be produced, consisting of the respective tenure of each train crew member's employment with Defendant.

Even though Request No. 3 is limited to the employment tenure of each crew member, the Court agrees with Defendant that the respective tenure of two train crew members would require Defendant to produce 10 years and 30 years, respectively, of medical files for these crew members. Defendant has convinced the Court that requiring Defendant to produce medical files dating back 10 years or more prior to the accident at issue would render the Request overly broad. The Court fails to see how such medical files could be relevant to the claims in this case. The Court therefore sustains Defendant's objection to Plaintiff's temporal limitation based upon Defendant's long-tenured crew members' employment duration. However, rather than deny the motion as to the Request, the Court imposes a temporal restriction on Request No. 3 limiting it to the train crew's medical files beginning five years before the date of the incident.

---

[22] No. 07-1279-MLB-DWB, 2008 WL 4148591, at *3 n.2 (D. Kan. Sept. 3, 2008).

[23] *Id.*

Defendant also argues that it would be unduly burdensome to produce documents responsive to Request No. 3. It states generically, without specific reference to the three crewmembers at issue or their actual medical files, that the request, "sweeps every piece of medical information [Defendant] has for its crew members within its grasp, which . . . *can* be a significant amount of medical information."[24] Defendant further states that these medical files include all medical information it has received regarding that employee from his health care providers.

A party asserting an unduly burdensome objection to a discovery request has "the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome."[25] Additionally, the objecting party must show "not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery."[26] This imposes an obligation "to provide sufficient detail in terms of time, money and procedure required to produce the requested documents."[27] Any objections that discovery is unduly burdensome must contain a factual basis for the claim, and the objecting party must usually provide an "affidavit or other evidentiary proof of the time or expense involved' in responding to the discovery request."[28]

Defendant has failed to meet its burden of showing facts justifying its unduly burdensome objection to Request No. 3. It has not offered an affidavit or any evidentiary proof

---

[24] ECF No. 57 at p. 10 (emphasis added).

[25] *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10-2514-RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011).

[26] *Id.*

[27] *Id.*

[28] *Id.*

10

to support its objection that producing the three train crew member's medical files responsive to Request 3 would be unduly burdensome.  Nor has Defendant offered any detail as to the time, money and procedure that would be required to produce the train crew's medical records that are the subject of Plaintiff's Request No. 3.  With the temporal limitation imposed herein, the disputed discovery request is limited to the medical files of only three of Defendant's crew members over only a five year period.  Defendant's objection that Request No. 3 is unduly burdensome is overruled.

### 2. Relevance Objection

Defendant argues that the relevance of the information sought by Request No. 3—the train crew members' entire medical history—is not readily apparent, and therefore Plaintiff has the burden to show the relevancy of the request.  Defendant claims that Plaintiff has failed to demonstrate the relevance of the documents sought by Request No. 3 and that she has not demonstrated any potential relevance of information to be derived from Plaintiff's extremely broadly worded request, nor has she agreed to any specific limitations as to the medical or health care records sought for these crewmembers.  Defendant further argues that Plaintiff has not identified any evidence of impairment or health problems on the part of any member of the non-party train crew involved in this incident.  Defendant also anticipates that Plaintiff will argue that crewmember Miguel Morales's testimony about having "blurry vision" makes such records relevant. It argues that Mr. Morales testified he had a hard time reading things "close up," that his issue of reading "close up" was what caused him to get his eyes checked, and that he had that vision issue for about a year before he got his eyes checked. Defendant contends there is no evidence that Mr. Morales had any trouble seeing on the date of accident, nor any evidence that Mr. Morales' distance vision was blurry at or around the time of accident.

Plaintiff argues that the medical files Defendant maintains on its personnel to ensure that its train crews are medically fit to operate a train are relevant to show Defendant knew or should have known that a crew member was medically unfit to operate a locomotive. She also argues that the Federal Railroad Administration requires Defendant to certify, among other things, that crew members have adequate hearing and vision and to maintain a record for each certified engineer that contains the information relied upon to make the determination.

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Relevancy is broadly construed at the discovery stage of litigation, and the discovery sought should ordinarily be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[29] Furthermore, "the touchstone of the relevancy of documents and information requested is not whether the discovery will result in evidence that is, or even may be, admissible at trial, but rather whether the discovery is 'reasonably calculated to lead to the discovery of admissible evidence.'"[30] "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."[31]

---

[29] *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586 (D. Kan. 2008).

[30] *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

[31] Fed. R. Civ. P. 26(b)(1).

12

When the discovery sought appears relevant on its face, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[32]  Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the request's relevancy.[33]  Relevancy determinations are generally made on a case-by-case basis.[34]

The relevance of the medical records of Defendant's train crew members to the claims asserted in this case is apparent on the face of the request.  This Court has recently addressed a relevancy objection to a similar discovery request seeking physicals, eye tests, hearing tests, and any other health-type test, and the results of same, performed on the train crew members involved in the incident in question from each member's initial date of employment to present.[35]  In *Stonebarger v. Union Pacific Corp.*,[36] this Court found the train crew's health information sought by the request was "clearly relevant."[37]  The Court noted that the health records were relevant to determine whether any members of the crew might have had physical or mental

---

[32] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[33] *McBride*, 250 F.R.D. at 586.

[34] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate,* No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[35] *See Stonebarger v. Union Pac. Corp.*, No. 13-CV-2137-JAR-TJJ, 2014 WL 3579374, at *5 (D. Kan. July 21, 2014).

[36] 2014 WL 3579374, at *5.

[37] *Id.*

13

problems which could have affected their ability to safely operate the train or to see the vehicle in time to take evasive action.[38]

Lest there be any doubt, Plaintiff succinctly states: "A major issue in this case is the performance of the train crew . . . and any impairments they may have had."[39] Plaintiff also explains that the Federal Railroad Administration requires railroads to certify that their crew members are not substance abusers and that they have adequate hearing and vision. As Plaintiff points out, Defendant's medical records of the crewmembers involved in this case are relevant and may lead to the discovery of admissible evidence insofar as they relate to substance abuse, hearing or vision problems, or any other cognitive impairments.[40] Plaintiff alleges that all three of the crew members wear glasses and all three testified that they could only make out a "figure" on the tracks, rather than knowing it was a child. Plaintiff also asserts that the deposition testimony of crewmember Mr. Morales supports the relevancy of Request No. 3 because Mr. Morales testified that his distance vision was blurry and he had been having trouble with his vision for probably about a year.[41]

The Court finds that the train crew's medical files kept by Defendant appear relevant on their face and, in any event, Plaintiff has shown the relevance of the train crew's medical files. Defendant's relevancy objection to Request No. 3 is overruled.

---

[38] *Id.*

[39] ECF No. 36 at 6.

[40] ECF No. 61 at 6.

[41] The parties have conflicting views of the Morales deposition testimony. Based upon the limited deposition testimony quoted to the Court, the Morales testimony appears ambiguous as to whether he may have had vision issues close up and/or far away. The Morales medical files may contain pertinent information on this issue.

### 3.     Objection Based Upon Privacy Concerns and HIPAA

Defendant objects to producing the train crew's medical histories, arguing that it is prohibited from disclosing that information pursuant to HIPAA, 42 U.S.C.A. §§ 1320(d)-1320(d)8. Defendant asserts that it has no obligation to seek a HIPAA waiver from its own employees, nor must it subject itself to HIPAA penalties merely to satisfy Plaintiff's curiosity.

This Court also recently overruled similar HIPAA-based objections in *Stonebarger*.[42] The Court held there that the employer of the individuals whose health information the plaintiffs sought was not subject to HIPAA.  "There are no federal statutes generally prohibiting the release of medical records by an employer. . . . The privacy rule of [HIPAA] does not directly regulate employers or other plan sponsors that are not HIPAA covered entities."[43]  The Court held that for an employer to be subject to HIPAA, it must be:  "(1) a health plan; (2) a health care clearinghouse; or (3) a health care provider who transmits any health information in electronic form in connection with a transaction covered by HIPAA."[44]  Presumably the medical files at issue here have already been released to Defendant by the crew members' healthcare providers. Defendant has no standing or basis to object to production of the documents based upon HIPAA. And even if Defendant, as an employer, was a covered entity under HIPAA, it would be permitted to disclose its employees' health information in response to discovery requests where a qualifying protective order is in place.[45]

---

[42] 2014 WL 3579374, at *6.

[43] *Id.* (citing *Harris v. Vescom Corp.*, No. CV 406-291, 2007 WL 1810159, at *2 (S.D. Ga. July 10, 2007)).

[44] 45 C.F.R. § 160.103.

[45] *See* 45 C.F.R § 164.512(e)(1)(ii)(B); (e)(1)(v).

As in the *Stonebarger* case, the Court finds Defendant is not a HIPAA covered entity and therefore cannot assert an objection based upon HIPAA to producing the train crew's medical files. And even if Defendant was subject to HIPAA, it would be permitted to disclose protected health information of its employees in response to Plaintiff's Request No. 3, pursuant to the Protective Order (ECF No. 11) already entered in this case or a supplemental qualified protective order. Accordingly, Defendant's objection to Request No. 3 on the basis that the requested information is protected by HIPAA is overruled.

IT IS THEREFORE ORDERED THAT Plaintiff's Motion to Compel (ECF No. 36) is GRANTED IN PART AND DENIED IN PART. Defendant shall produce all train crew members' medical files responsive to Plaintiff's First Request for Production No. 3, but limited to the time period five (5) years preceding the date of the incident at issue in this case.

IT IS FURTHER ORDERED THAT each party bear their own costs related to the motion.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 9th day of October 2014.

*s/ Teresa J. James*
Teresa J. James
United States Magistrate Judge